Yes, hello, good morning. May it please the court, my name is Elizabeth Rodriguez for petitioner Mr. Perez or Cupertino. I would like to save two minutes for rebuttal. In this case I would first like to discuss the issue of whether petitioner met his burden of showing a protected ground. We argue that he did. In this case it was simply implausible to negate that there was a political opinion. Here we have an instance where an entire community is not simply protesting the return of a single member to their community, but really a systematic failure of the government to protect their kind. We're here, instead of giving them justice, they take the side of a potential criminal against his victims. So they essentially helped this person sweep his crimes under the rug. This case I would go so far as to saying is not so different from events in this very country, where incidents such as those against, for example, Rodney King or Breonna Taylor or George Floyd brought a community together for purposes of a political movement. Similarly here, it was through the disappearance of this one that movement still continues today and we still continue to see it through a country condition report showing that discrimination is still very prevalent against the indigenous community, especially with farmers. Can I ask, so as I understand it, the people that were protesting the actions of this ranch owner, there were 600 other families that joined on the land and were essentially living there as well, is that correct? Yes, that's correct, Your Honor. However, I would note that my client was part of the original 60 who actually lived on the land and worked the land. But I guess the cumulative group was trying to, as you say, protest this disappearance of a worker and the authorities' inability or unwillingness to do something about it? Am I capturing what you're saying? Yes, Your Honor, that's exactly what I'm saying, that it wasn't just a case of them wanting this person back. It's really, it became really a political movement to where it's really a systematic effect of where these people were not being listened to. And we see this also when he explained that all these armed people came into the land to evict them without prior getting any notice. And then actually it was based on the reports that were submitted, there were over a thousand police and military and armed men who went in there and essentially started shooting at them, including at respondent, I'm sorry, petitioner, and then he, you know, had to flee. Is that number, is that number that there were over a thousand, is that in the record? Yes, Your Honor, it is in the record. If you give me a moment. If I can come back to that at rebuttal. I guess what, I mean, the thing, so the briefing discussed some cases where we have said that it can be persecution to be chased from your house, basically, chased from your home, made to flee. This case is unique in that in the prior cases where we have said that, there hasn't been any sort of issue about whether the people being chased from their home had the right to be there long term. You know, there just wasn't any question about that. And here, your client and the people who were with him, the other workers, and then the other protesters, were on private land and doing things that the owner of that land didn't want them to do. And so it seems slightly different in terms of being forced to move in that circumstance versus forced to move in a place that's indisputably your home. So can you address, I'm just struggling with how is that persecution in light of the cases that we have, the factual circumstances that we've looked at before? Right. So in this case, we would argue that because the petitioner was one of the people who actually worked there, and actually was still, it would seem, along with other members were still getting paid. And part of that payment did include them being able to live there. And they never got any notice that they were not welcome there. In fact, they were still working there and getting paid. So I think that really is what makes a difference. Well, as I understand it, they weren't just forced from their land, but they were shot at and there were several people killed in the process. Is that right? Right. There were at least nine people killed. And I'll point to this once I get back on rebuttal. I believe it was 45 people injured and five were actually shot point blank. So that's essentially what happened in this case. And you also contend that the agency in reviewing this, the nexus issue, erroneously relied on a one central reason finding. In other words, that because petitioner had not established that this was the main reason or the central reason, their political opinion, that that nexus hadn't been established and you're saying that this was an error. Do I understand that correctly? Yes, Your Honor. I believe the correct standard would have been a reason for and not necessarily a central reason. And that's what's different, really, from, for example, like an asylum claim in this case. And what should we do with this error or alleged error? Well, Your Honor, I would ask that the case be remanded so that the proper standard can be reviewed at the court below. That's what we're asking. Would you like me to continue? Could you address or provide your strongest argument for reversal on the CAT claim? Yes. So I would argue here that it was merited here because the petitioner is identifiable as an original member of the protesters. As I indicated before, he was really part of the 16 members that actually worked on the land. So this makes it more likely that he would not only be tortured in the future, but especially where his skills are limited to farming and agriculture, he would really have to go back to that type of work there, potentially working with other farmland. Also, in the record, we did see a letter from the Indigenous National Group stating that he was actually one of these members. So there is indication that there is either a list or at least that there's some documentation where he was part of this group and that could easily be found by potential future employers should he be going back to his country. For the same reason, relocation would really be impossible because, again, through his skills, he would be limited to this type of work. And then on top of that, there's still condition evidence that shows that the Indigenous are essentially being ignored by police and government. There is evidence that some things have improved. However, generally, it's still a concern in that country. And with that, I would like to reserve my two minutes. All right, Ms. Morronelli. May it please the court. Lisa Morronelli on behalf of the respondent, the United States. The court should deny this petition for review because the record does not compel the conclusion that Perez established eligibility for withholding of removal to Guatemala. First, the record does not compel the conclusion that Perez experienced harm rising to the level of past persecution in Guatemala. Next, the record does also not compel the conclusion that Perez established an objectively reasonable fear of future persecution, where Perez traveled frequently back to Guatemala over a period of 10 years without experiencing any harm. Third, even assuming that Perez did establish past persecution in Guatemala, his repeated safe returns to Guatemala over that as well as changed circumstances relating to the Nueva Linda protest, rebutted the presumption that he would be persecuted upon his return to Guatemala. Ms. Morronelli, can we start with the past persecution issue? Explain to me why this doesn't rise to the level of past persecution. If you have national police coming in, driving people from their homes and shooting at the crowd and essentially killing nine, injuring scores of others, our precedent talks about threats of violence, that imminence being past persecution. Why doesn't this meet that standard? The board was looking at what Perez experiencing during that day, and the board also was looking at the fact that this occurred after tensions escalated between the protesters taking over the ranch and the owner of the ranch wanting the protesters to no longer be on the land. The board did look at the fact that Perez was not harmed or was not singled out for harm by the police. And why wouldn't he be singled out by the police if he's among the crowd that was shot at? In other words, many people are shot at, nine die. Why isn't he one of those people that face that imminent threat of harm along with the others? The board was looking at the fact that he did not identify anything specific in his testimony other than the fact that he ran out into the cattle field and did not experience any physical harm He also, the board also cited the fact that he did not testify to any residual emotional harm stemming from the incident. And based on all the different circumstances, the board decided that this did not meet the serious harm required. In the event, both the immigration judge and the board went further in both decisions. And they did say that even assuming, let's assume that this was past persecution. And both the immigration judge and the board did say, assuming this was past persecution, that did happen. This petitioner returned to Guatemala a number of times over a period of 10 years after the individual unique circumstances, the presumption of a future persecution was rebutted because petitioner returned to his home a number of times over a period of 10 years and did not benefit from the presumption of future persecution where he went back and visited his family. Petitioner testified at times one month or two months at a time and did not experience any harm in Guatemala. Let me follow up with that. As I understand it, his testimony, which was found credible, also said that he was laying low during these trips. He didn't return to his type of work in that there was a list of protesters involved in these protests. And in recent years, there have been a kidnapping and why? Why isn't that evidence to suggest that he could face fear of future persecution, or at least that the evidence of rebuttal is just speculative? The immigration judge and the board were looking at the fact that this is not a case where the petitioner returned one time for a short period of time to his home. But in this case, he returned a number of times, and he testified at times for a month or two months to stay with his family. His children were born during that time, and there's no evidence that anyone was looking for him or that he had any interaction with the police or anyone that was involved with the Nueva Linda protests. There is evidence in the record that other members, friends, that he knew that were continuing to be involved with the protest did have some things that happened to them. But the board was looking at the fact that this petitioner was no longer involved with the protest, did not want to be involved in it, returned home a number of times. Could I ask this? If I recall, I think your brief concedes that the board should not have relied on the one central reason standard for nexus. And so if we were to find that the harm rose to the level of persecution that we should remand for the board to consider that again, or, you know, with with with this intervening law, why not remand to consider the rebuttal evidence at the same time in order to clear up whether there's been rebuttable evidence under under appropriate standards? The the yes, we did argue that this court does not need to decide the nexus issue in this case because the court can affirm the agency's decision on the fact on on on on the fact that there the presumption of future persecution was rebutted. If this court would decide to remand, that they would that the agency would need to reconsider those issues on remand. My understanding is that another key fact that the agency relied on and finding that there wasn't a likelihood of future persecution is that after this dramatic event where everybody was kicked off the ranch, the protests continued out in the open, they just continued on public land, and that those protests have continued without retaliation. Does the record tell us whether any of the people who have been involved in those ongoing protests were also on the list that the petitioner talked about in his testimony? The the record does not specify who who was on the list or the specific list is not in the record, so it is there the record does not show if if those individuals were on this list or not. The petitioner talked about different individuals he knew that had experienced some harm but was not able to give specifics about who it was that harmed him. It was some information that he had heard from from other people. Am I correct in remembering that the record does establish that those ongoing protests that were happening out and open occurred for a number of years without incident? Yes, that's right. The protest was removed to public land for many years, that's correct, yes. Counsel, as I recall your brief, government's brief, did not address the political opinion question that the agency resolved. I take it you have no quibble with petitioner's contention that these actions were motivated by a political opinion? Because because the nexus issue would we because because the board did not decide this case under the a reason standards, we have not defended the nexus determination in this particular case and we want to argue that the board's decision can be affirmed on past persecution and the the objective future persecution as well as the the rebutted future persecution fear. Just as a final question, but nexus is a separate question from political opinion as a basis which petitioner argued below and here and it seems to me that government has waived that issue here, waived any challenge that political opinion was a basis for the action. I just wanted to make sure I understood that correctly. As opposed to nexus, which I agree would need to be remanded. We, if the court would want to remand for nexus, we would like the agency to reevaluate the political opinion element as well. But how could it do that if you've waived that argument here? In other words, that's a if you're not challenging it on appeal before us now when it was properly raised, wouldn't that be a The immigration judge and the board, the board, the immigration judge did determine that it was not that that the petitioner was not harmed on account of his political opinion, but the immigration judge was looking at the with the landowner. Okay. All right. Any further questions? All right, Mr. Rodriguez, I think you have a couple of minutes for rebuttal. Yes, Your Honor. First to answer your question earlier, where it does state the number of people that were killed and the numbers that I stated earlier, that would be in page 220 of the record. Um, with that, I would like to address that. We argue that petitioner did suffer harm and this pest persecution from this very incident. Um, as I noted earlier, he was shot at and did narrowly escape being injured or killed through what happened. He has not been able to work in agriculture anymore in his country. Counsel, I'm not sure what the answer is in terms of past persecution. It seems though that the harder hurdle you have is the likelihood of future persecution, which has to be established to get the relief that your client wants. And I'm struggling with that because for, you know, along the lines of some of the questions I asked your opponent about the protests, which are apparently what instigated this, um, you know, aggressive, violent incident have been ongoing. They've just they've moved locations and now the ranch owner doesn't care, apparently because they move locations and the protests have been out in the open and people have not had any harm suffered as a result of protesting activities. So if that if that's the link for why this dramatic thing happened, why? Why is the likelihood of future persecution established? Um, I would I would say the link is still established because even if in this particular incident with this particular land owner, maybe no future people haven't have been harmed, although you know, in the record, we did argue that there was at least two incidents where people were harmed. There are still it is still the practice in that country where individuals who are farmers and take part in this types of activities are continually harmed and are, um, at times even even killed. Um, also, should we? Would we? Would it be appropriate for us to look at country conditions? Some sort of general evidence over the incidents that are, you know, the history of activities in this location related to this particular protest movement? I would say it is appropriate because we are trying to figure out whether I mean, part of the whole analysis is relocation within that country. So if there is a connection, for example, to police or government, um, then that would, um, be relevant and really is relevant to any asylum or cat or withholding claim. I mean, there isn't an absence of evidence of recent problems. Is there? If petitioner's testimony is to be credited, which the a person was shot while driving near the ranch by people hired by the ranch owner and the year before a person that was kidnapped or attempted to be kidnapped. And those are all protesters involved in these protests. So it's, you know, it's not just country conditions, is it? It's there. There's there's specific evidence out there potentially implicating future threats of harm to people involved in these protests. Is it not? Yes, right. Um, at least when the merits hearing did happen, at least two individuals, which my client did know of, he heard from from people that they that they were harmed in these two incidents. And both of these were people that he knew who were also part of this group in this ranch. Yes. Any further questions? Mhm. All right. Thank you, Counsel, for your helpful argument. Um, the case of Alaska's Lopez versus Garland will be submitted.
judges: FORREST, SANCHEZ, Freudenthal